**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Joseph Daniel Montes,<br><br>Plaintiff,<br><br>v.<br><br>Lora Morales Fernandez; Brenda Lemley Spence; and Deena Steinmetz,<br><br>Defendants. | No. CV-17-03117-PHX-DGC<br><br>**ORDER** |

Plaintiff Joseph Montes filed a pro se civil rights complaint against Defendants Lora Morales Fernandez, Brenda Lemley Spence, and Deena Steinmetz. Doc. 1. The Court dismissed the claims against Fernandez. Doc. 36. Spence and Steinmetz have moved for summary judgment on the remaining claims. Doc. 47. Plaintiff has not responded. Defendants request oral argument (Doc. 54), but it will not aid the Court's decision. *See* Fed. R. Civ. P. 78(b); LRCiv 7.2(f). For reasons stated below, the Court will grant the motion.

**I.      Plaintiff's Allegations.**

Plaintiff and his wife Veronica have three minor children: XDP, AFM and JDM. Plaintiff alleges that on April 29, 2017, Fernandez (Veronica's aunt) falsely complained to the Arizona Department of Child Safety ("DCS") that he and Veronica were mistreating

the children. Doc. 1 at 2. As a result of this complaint, DCS supervisor Spence authorized the removal of the children from his custody. *Id.* On May 2, 2017, DCS investigative specialist Steinmetz removed the children from their schools and took them into temporary protective custody. *Id.* Plaintiff claims that the children were in no imminent danger when they were taken into DCS custody without a court order. *Id.* at 1. He asserts claims for violations of his Fourth and Fourteenth Amendment rights pursuant to 42 U.S.C. § 1983, and seeks $5 million in damages. *Id.* at 3.[1]

## II. Summary Judgment Standard.

A party seeking summary judgment "bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Summary judgment is appropriate if the evidence, viewed in the light most favorable to the nonmoving party, shows there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment is also appropriate against a party who "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

## III. Defendants' Summary Judgment Motion.

### A. Fourteenth Amendment.

Parents have a well-established Fourteenth Amendment right to custody of their children. *See Troxel v. Granville*, 530 U.S. 57, 66 (2000) (citing cases). The Fourteenth Amendment "provide[s] a guarantee 'that parents will not be separated from their children without due process of law except in emergencies.'" *Keates v. Koile*, 883 F.3d 1228, 1236-37 (9th Cir. 2018) (quoting *Mabe v. San Bernardino Cty.*, 237 F.3d 1101, 1107-09 (9th Cir. 2001)). State officials "may not remove children from their parents without a

---

[1] At the time of these events, XDP was 13 years old, AFM was 10, and JDM was 8. Doc. 48 ¶ 4.

court order unless they have 'information at the time of the seizure that establishes reasonable cause to believe that the [children are] in imminent danger of serious bodily injury.'" *Id.* (quoting *Rogers v. Cty. of San Joaquin*, 487 F.3d 1288, 1294 (9th Cir. 2007)). "This requirement 'balances, on the one hand, the need to protect children from abuse and neglect and, on the other, the preservation of the essential . . . liberty interests that families are guaranteed under [the] Fourteenth Amendment[.]'" *Demaree v. Pederson*, 887 F.3d 870, 878 (9th Cir. 2018) (quoting *Rogers*, 487 F.3d at 1297).

Defendants argue that they did not violate Plaintiff's Fourteenth Amendment rights because the undisputed facts show that the children were under an imminent threat of serious physical harm when they were removed from parental custody. Doc. 47 at 7-13. The Court agrees.[2]

### B. The Undisputed Facts.

Defendants' evidence establishes the following facts. Plaintiff and Veronica have a history of substance abuse and domestic violence. Doc. 48 ¶¶ 28-34. On April 24, 2017, Plaintiff became upset with Veronica after she spent a couple days drinking at a friend's house and could not remember how to get home. On April 26, 2017, Veronica left the children home alone when XDP refused to clean up a mess. The police were there when Plaintiff arrived home, and he told them that Veronica had become mentally unstable over the past two weeks and would get very angry with the children. The April 26 incident was caused in part by one of XDP's fits of rage, and dishes, marbles, and other objects were strewn about the house. *Id.* ¶¶ 9-11.

On April 28, Veronica became very angry with the children's messes and slapped XDP for talking back to her. XDP began screaming, and he and Veronica threw food at each other. XDP called 911. The police arrived to find Veronica running around the house screaming and crying. The children explained that they were fearful of Veronica because she had called them "devil children" and thrown things at them. Plaintiff stated that

---

[2] Because Defendants did not commit a constitutional violation, the Court need not decide whether they are entitled to qualified immunity. *See* Doc. 47 at 13-17.

- 3 -

Veronica was very angry, delusional, and depressed, but refused to take medication. Suspecting that Veronica was using illicit drugs, the police determined that she was a danger to herself and the children. The police prepared a petition to involuntarily admit her to an urgent psychiatric care center. Veronica tested positive for methamphetamine upon admission to the center. *Id.* ¶¶ 13-21.

The center reported the incident to DCS the next day. A DCS hotline specialist analyzed the report and marked it a "Priority 3" because Veronica was the aggressor. Priority 3 reports require a DCS field investigation within 72 hours. The report was assigned to Spence for further action. *Id.* ¶¶ 20-23.

On May 1, Spence received a hotline report from Fernandez, who had recently visited the family at their home. Fernandez reported that Veronica and Plaintiff were abusing crystal meth, and Plaintiff was selling the drug. Fernandez expressed concern about the profanity-laced yelling between Plaintiff and XDP. She stated that XDP was overweight, had high blood pressure, and suffered frequent nosebleeds. Veronica knew about the conditions for months but never took XDP to the doctor or followed through on obtaining state-subsidized health insurance (AHCCCS). Spence assigned both reports to Steinmetz for investigation. *Id.* ¶¶ 8, 24-26.

Steinmetz reviewed the family's prior involvement with DCS between 2007 and 2009. During this time, Plaintiff and Veronica abused drugs and had an extremely volatile relationship. One of the many incidents of domestic violence involved Plaintiff chasing Veronica around the house with a knife while holding AFM. Plaintiff and Veronica threw silverware and other objects at each other, which Plaintiff realized could kill one of the children. DCS took custody of the children in early 2007, and placed them with their grandparents while Veronica received substance abuse treatment. The children were returned to their parents in 2009. Spence was the DCS case manager when the children were placed with their grandparents in 2007. *Id.* ¶¶ 25-36.

On May 1, 2017, Steinmetz went to check on the children and interview their parents, but no one was home. Steinmetz interviewed the children at their schools. AFM

- 4 -

recounted the constant yelling that went on in the home. JDM also discussed the yelling between Plaintiff and XDP, and noted that XDP breaks a lot of things. JDM was fearful of XDP and Plaintiff. He knew about his parents' drug use because he had seen a bong used in the home and smelled marijuana. He explained that Veronica acted crazy because of her drug use, and she would pull XDP and AFM by the arm and slap them. XDP reported being disciplined with a belt. He stated that his high blood pressure and nosebleeds had gone untreated. *Id.* ¶¶ 38-41.

Steinmetz interviewed Plaintiff and Veronica the next day. They admitted their history of substance abuse and domestic violence. Veronica stated that she had used meth shortly before the April 28 incident, and had the urge to continue using the drug. She acknowledged that the children needed to visit the doctor. *Id.* ¶¶ 47-56.

Plaintiff and Veronica declined help from DCS. They refused to participate in a Team Decision Meeting ("TDM") to discuss a plan where multiple DCS resources would be available to help a family in crisis avoid child abuse and neglect in the home. Steinmetz and Spence determined that the children were at risk of serious physical injury in their parents' custody. After Plaintiff again declined to attend a TDM, a DCS manager authorized Steinmetz to take the children into temporary protective custody. The same day, May 2, Steinmetz went to the children's schools and took them into DCS custody. Steinmetz promptly notified Plaintiff, and the children were placed temporarily with Fernandez. *Id.* ¶¶ 42-46, 62-67.

Defendants filed their summary judgment motion and statement of facts nearly three months ago on December 20, 2018. Docs. 47, 48. Plaintiff failed to respond within 30 days as required by Local Rule of Civil Procedure 56.1(d). On January 31, 2019, the Court issued an order advising Plaintiff of his obligation to respond and giving him until February 22, 2019 to do so. Doc. 55. The Court provided Plaintiff the following guidance:

> Defendants' Motion for Summary Judgment seeks to have your case dismissed. A motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure will, if granted, end your case.

> Rule 56 tells you what you must do in order to oppose a motion for summary judgment. Generally, summary judgment must be granted when there is no genuine issue of material fact – that is, if there is no real dispute about any fact that would affect the result of your case, the party who asked for summary judgment is entitled to judgment as a matter of law, which will end your case. When a party you are suing makes a motion for summary judgment that is properly supported by declarations (or other sworn testimony), you cannot simply rely on what your complaint says. Instead, you must set out specific facts in declarations, depositions, answers to interrogatories, or authenticated documents, as provided in Rule 56(e), that contradict the facts shown in the Defendants' declarations and documents and show that there is a genuine issue of material fact for trial. If you do not submit your own evidence in opposition, summary judgment, if appropriate, may be entered against you. If summary judgment is granted, your case will be dismissed and there will be no trial.

*Id.* at 1-2.

Despite that advice and the extension of time to respond, Plaintiff has not responded to Defendants' motion. In light of Plaintiff's silence, Defendants' factual assertions are deemed undisputed for purposes of their summary judgment motion. *See* Fed. R. Civ. P. 56(e)(2) ("If a party . . . fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion[.]"); *Heinemann v. Satterberg*, 731 F.3d 914, 917 (9th Cir. 2013) ("If there is a failure to respond, [Rule 56] 'authorizes the court to consider a fact as undisputed.'") (quoting Advisory Committee Notes (2010)).

### C. Defendants Are Entitled to Summary Judgment.

The undisputed facts, even when construed in Plaintiff's favor, show that Defendants had reasonable cause to believe that the children were in imminent danger of serious injury when they were removed from Plaintiff's custody. Plaintiff was a suspected drug dealer. Doc. 48 ¶ 24. He had a history of domestic violence that placed the children in jeopardy of serious physical harm. *Id.* ¶¶ 29-30, 34. JDM feared Plaintiff because of his yelling and contentious relationship with XDP. *Id.* ¶ 40. Veronica was mentally unstable and used crystal meth. *Id.* ¶¶ 8, 10, 17, 21, 24, 41. She left the children home

alone on at least one occasion, and threw things at them when she became angry. *Id.* ¶¶ 10, 13, 16, 21. XDP had serious, untreated health problems. *Id.* ¶¶ 6, 24, 41, 48.

These facts – which were known to Defendants when they made the custody determination – "gave rise to a reasonable inference that the children were in imminent danger of serious bodily injury and that temporary removal was justified to avert this risk." *Teeman v. Yakima Cty.*, No: 1:15-CV-3139-TOR, 2016 WL 9019885, at *5 (E.D. Wash. Apr. 18, 2016); *see* A.R.S. § 8-821(D) (providing that a child may be taken into temporary custody without a court order by a child welfare investigator "if temporary custody is clearly necessary to protect the child because exigent circumstances exist"). The police reached a similar conclusion when they petitioned for Veronica's involuntary admission to the psychiatric center on April 28, 2017. *Id.* ¶ 18. The juvenile court also determined, on May 5, 2017, that the continuation of the children in Plaintiff's home was contrary to their welfare. *Id.* ¶¶ 69-70.[3]

The undisputed facts show that Defendants did not violate Plaintiff's Fourteenth Amendment rights by placing the children in temporary protective custody. The Court will grant summary judgment in Defendants' favor. *See* Fed. R. Civ. P. 56(a), (e)(3); *Heinemann*, 731 F.3d at 917.[4]

**IT IS ORDERED:**

1. Defendants' motion for summary judgment (Doc. 47) is **granted**.

---

[3] When Steinmetz took the children into DCS custody on May 2, 2017, Arizona law did not have a procedure for child welfare investigators to immediately obtain a court order before removing children from parental custody. Doc. 48 ¶ 68; *see Demaree*, 887 F.3d at 880 (noting that under A.R.S § 8-824(A), the earliest a court could conduct a hearing would be five to seven days after a dependency petition was filed). Instead, a temporary custody notice is served, as was done in this case, and the children are taken into protective custody pending the Attorney General's filing of a dependency petition. Doc. 48 ¶¶ 66, 68.

[4] The claims of children who are taken into state custody are based on the Fourth Amendment right to be free from unreasonable seizures rather than the Fourteenth Amendment right to familial association. *See Kirkpatrick v. Cty. of Washoe*, 792 F.3d 1184, 1189 (9th Cir. 2015), *on reh'g en banc*, 843 F.3d 784 (9th Cir. 2016). To the extent Plaintiff asserts Fourth Amendment claims on behalf of himself or his children, the claims fail for reasons stated above because "the same legal standard applies in evaluating Fourth and Fourteenth Amendment claims for the removal of children." *Wallis v. Spencer*, 202 F.3d 1126, 1137 n.8 (9th Cir. 2000).

2. The Clerk is directed to enter judgement for Defendants and **terminate** this action.

Dated this 13th day of March, 2019.

*David G. Campbell*
―――――――――――――――――
David G. Campbell
Senior United States District Judge